IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

```
-------------------------------------------------------------------------x
                                         :
In re:                                   :    Chapter 11
                                         :
C. BEAN TRANSPORT, INC.,                 :    Case No. 2010-bk-71360
                                         :
         Debtor.                         :
                                         :
-------------------------------------------------------------------------x
```

### DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION
(Accounts Receivable)

C. Bean Transport, Inc. ("C. Bean"), the above-captioned Debtor-in-Possession, moves this Court for authority to use cash collateral pursuant to 11 U.S.C. § 363(c) and Bankruptcy Rule 4001(b) represented by proceeds of accounts receivable generated by C. Bean as set forth herein and to provide adequate protection as appropriate therefore. In support of this Motion, the Debtor-in-Possession would show the Court as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334(b). Reference to the Court of this motion is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A). In addition, venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this application includes §§ 361, 363, and 364 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b).

**Background Information**

2.	C. Bean filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on March 17, 2010; and since such date has continued in possession of its property and operation of its business as Debtor-in-Possession.

3.	General Electric Capital Corporation ("GECC") asserts a security interest and lien in all accounts receivable of C. Bean and proceeds thereof.

4.	Federal Financial Credit, Inc. ("FFCI") asserts a security interest and lien in all accounts receivable of C. Bean and proceeds thereof, which FFCI is believed to recognize is junior to the interest of GECC in accounts receivable.

5.	C. Bean anticipates the immediate need to use cash collateral to preserve and protect the assets of the estate and to administer and collect outstanding accounts receivable by a small but qualified staff of four persons.

6.	C. Bean is engaged in discussion with both GECC and FFCI seeking a consensual cash collateral order, which, if achieved, will be presented to the Court.

7.	The accounts receivable which are believed to be subject to the asserted security interests claims of GECC and FFCI, and thus cash collateral, are accounts receivable generated by the operations of C. Bean through its two operating divisions, the Dry Van Division of Fort Smith, Arkansas, and the Flat Bed Division of Amity, Arkansas. On a pre-petition basis, account payments on such accounts receivable from these operations have been remitted to the Debtor-in-Possession pursuant to an outstanding lockbox arrangement maintained with GECC, and applied by GECC in reduction of obligations to GECC by C. Bean. Post-petition, such collections continue to be deposited into the lockbox account.

8. In addition to the C. Bean trucking operation noted in paragraph 7 above, C. Bean owns and operates a facility consisting of a 15,000 square foot office and two warehouse facilities totaling 150,000 square feet located on Jenny Lind Road in Fort Smith, Arkansas. Space in the warehouses is leased to third parties. In connection with such warehouse operations, C. Bean provides to its tenants, for a fee, certain services, including delivery/drayage services and loading, unloading, and stocking. The warehouse operation is referred to as the Jenny Lind Warehouse Operations. The Jenny Lind Warehouse Operations are believed to be subject to a mortgage in favor of the Arkansas Development Finance Authority ("ADFA"), which asserts a claim against C. Bean in the approximate amount of $5,400,000. C. Bean understands that ADFA asserts that the obligation due it is secured by a first real estate mortgage, which also encumbers certain proceeds from operations of the Jenny Lind Warehouse Operations. Warehouse fees, rents, and accounts receivable generated from the Jenny Lind Warehouse Operations are believed to not constitute cash collateral of GECC or FFCI, nor to be subject to any security interest or claim of GECC and/or FFCI in cash collateral. It is C. Bean's understanding that neither GECC nor FFCI have loaned funds against any such accounts or rents generated from the Jenny Lind Warehouse Operations, and that neither GECC nor FFCI have a security interest or claim in such proceeds superior to the interest of ADFA. To the extent that funds associated with the Jenny Lind Warehouse Operations are received post-petition by GECC, they should be segregated and held for the benefit of C. Bean and ADFA. It is likely that GECC and/or FFCI will assert claims in the proceeds of the Jenny Lind Warehouse Operation.

9. As of March 19, 2010, the C. Bean accounts receivable include a face value amount of $1,690,836 for the Fort Smith, Arkansas, Dry Van Division, and $591,497 for the Flat Bed Division of Amity, Arkansas. These accounts receivable are presently maintained at two

locations, with supporting documents and electronic records stored at each location. These accounts require supervisions and attention by persons knowledgeable as to such accounts, and documentation and administration of the collection process for a 45-60 day effort.

10. C. Bean specifically proposes to utilize cash collateral to fund an average monthly expenditure as shown on Exhibit "A" for the period of March 18 – May 14, 2010. These funds will be utilized to retain four persons who, pre-petition, were employees of C. Bean. These individuals supervised or administered such accounts and are familiar with supporting documents evidencing completion of delivery of goods, upon which the accounts are based. These employees would maintain records, assimilate, and coordinate accounts receivable databases currently maintained in two separate locations, namely Fort Smith, Arkansas, and Amity, Arkansas, and to collect such accounts, and, if prudent, consolidate the databases.

11. As set forth in more detail in the budget attached hereto as Exhibit "A," the total monthly expenditure for which cash collateral utilization is sought is approximately $38,000. Authorization is sought for such expenditure for a nine (9) week period. These expenditures are necessary to preserve and monetize for the Estate and its creditors the value of such accounts receivable, and will directly benefit the interest of secured creditors with interests in accounts receivable such as GECC and FFCI. The amount for which authority is sought will not deplete the substantial cash collateral equity cushion of GECC as noted below. FFCI is otherwise adequately protected by its asserted mortgages, liens, and security interest in the accounts receivable and in other assets. It is unreasonable to assume such accounts receivable could be preserved and collected without the necessity and cost of retention of personnel to conduct such activities which will incur reasonable expenses.

12. C. Bean owns assets with substantial equity from which an adequate protection lien can be given to GECC and FFCI if required. It is respectfully submitted that GECC and FFCI are each well secured by assets. Those C. Bean assets include:

a. <u>Accounts Receivable</u>. The gross face value of accounts receivable of C. Bean as of this date are valued at $2,282,334. The outstanding principal loan balance to GECC is approximately $1,750,000. The gross receivable balance includes accounts in an amount of $129,484 aged over one hundred twenty (120) days. Deducting this amount from the gross face value of receivables indicates a net value of $2,164,516. This amount of $2,164,516 (after deducting aged receivables) exceeds the amount of principal indebtedness by over $400,000 or 23%, which represents a significant equity cushion to provide adequate protection to GECC.

b. FFCI claims an interest in accounts receivable, which C. Bean believes are junior to the GECC claim, subject to further determination. FFCI asserts a principal indebtedness believed to be in the amount of $1,300,000. FFCI also asserts liens and/or mortgages in the following various additional assets of C. Bean, including:

1) Certain Rolling Stock consisting of 332 trailers and 15-20 tractors. C. Bean has obtained an appraisal of Taylor & Martin, Inc., dated March 10, 2010, which indicates the value of such Rolling Stock in which FFCI asserts a lien as follows:

| Forced Liquidation Value | Orderly Liquidation Value | Fair Market Value |
|---|---|---|
| $999,800 | $1,249,750 | $1,438,675 |

- 5 -

    2)    FFCI is believed to claim a first mortgage lien against real estate described as a 12½ acre unimproved tract of land located at the northwest corner of Jenny Lind Road and Cavenaugh, which is believed to have a value of $40,000 per acre for a total value of $500,000.

    3)    FFCI asserts a second mortgage in the Jenny Lind Property, with an appraised value in excess of $8,000,000 against an approximate $5,400,000 outstanding principal obligation, with equity estimated to exceed $1,000,000.

    4)    FFCI asserts a second mortgage against C. Bean property located at 7001 Highway 271, Fort Smith, Arkansas, consisting of approximately 13 acres. This property is subject to a first mortgage in favor of Bank Midwest with an approximate principal balance of $1,600,000. It is believed that equity over the first mortgage exceeds $1,000,000. An appraisal of the property has indicated a value of $2,793,000, which was prepared on May 4, 2009.

It is believed that the value of FFCI's non-account receivable collateral exceeds $3,499,800 (utilizing the Forced Liquidation Value for the Rolling Stock).

    13.    In addition thereto, C. Bean desires use of cash collateral in the amount of $35,000 to fund bonus compensation payable to the four individuals, none of whom is believed to be an insider of C. Bean, as that term is defined in 11 U.S.C. § 101(31), payable in the amounts shown on the attached Exhibit "B." These amounts will be payable only should such individual satisfactorily complete employment through May 14, 2010, and subject to additional requirements the Court may impose.

14. This Motion does not presently seek funds to fund operations of the Jenny Lind Warehouse Operations, as discussions are underway with ADFA concerning use of proceeds for such purposes, by consent.

### Request for Use of Cash Collateral

15. To continue its collection operations, C. Bean must utilize cash collateral. The attached Exhibit "A" reflects a budget from March 17, 2010, through May 14, 2010.

16. C. Bean believes that GECC and FFCI are adequately protected for the use of its cash collateral due to the equity in other assets in which each holds or does not have a security interest. In addition, and as additional adequate protection, C. Bean is prepared to grant GECC and FFCI replacement liens in estate property in the same priority as those parties enjoyed pre-petition subject to a determination that GECC and FFCI have properly perfected and valid security interests in such property pursuant to their loan documents with C. Bean. Furthermore, the continued accounts receivable collections of C. Bean constitute a direct benefit to GECC by protecting and maximizing the recovery of its existing collateral.

17. C. Bean has no immediate source of income other than from the use of cash collateral. If it is not permitted to use such cash collateral, C. Bean will have to cease its accounts receivable collection operations which will cause immediate and irreparable harm to the Estate. Not only will four employees lose their jobs, but C. Bean will not be able to maximize the value of its assets for unsecured creditors.

**Notice**

18. Notice of this Motion and the hearing concerning the same shall be mailed by first class mail to counsel for GECC, FFCI, and ADFA, the Office of the United States Trustee, those parties who have requested notices, and the 20 largest unsecured creditors.

WHEREFORE, C. Bean requests that this Court enter an order authorizing it to use cash collateral as set forth in the budget attached as Exhibit "A" and for such other and further relief as may be property and just.

Respectfully submitted this 19th day of March, 2010.

                                                  DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

*/s/ Chad J. Kutmas*

By: _____

Gary M. McDonald, OBA No. 5960*
Chad J. Kutmas, OBA No. 19505*
Benjamin C . Perrine, OBA No. 22680*
William H. Spitler, Ark. Bar No. 2009101
320 South Boston, Suite 500
Tulsa, OK 74103-3725
(918) 582-1211
(918) 591-5360 (Fax)

*Pro Hac Vice Applications Pending

-and-

SMITH, COHEN & HORAN, PLC

Don A. Smith, ABA #62026
1120 Garrison Avenue
PO Box 10205
Fort Smith, AR 72917
479-782-1001
479-782-1279 – Facsimile

*Proposed Counsel for C. Bean Transport, Inc.*

1685994.1

- 8 -

# EXHIBIT "A"

# EXHIBIT "A"

|  | Week 1 Friday 3/19/2010 | Week 2 Friday 3/26/2010 | Week 3 Friday 4/2/2010 | Week 4 Friday 4/9/2010 | Week 5 Friday 4/16/2010 | Week 6 Friday 4/23/2010 | Week 7 Friday 4/30/2010 | Week 8 Friday 5/7/2010 | Week 9 Friday 5/14/2010 |
|---|---|---|---|---|---|---|---|---|---|
| **Salaries** | | | | | | | | | |
| James Fisher | $ 940.50 | $ 1,567.50 | $ 1,567.50 | $ 1,567.50 | $ 1,567.50 | $ 1,567.50 | $ 1,567.50 | $ 1,567.50 | $ 1,567.50 |
| Kelly Baptiste | $ 807.84 | $ 1,346.40 | $ 1,346.40 | $ 1,346.40 | $ 1,346.40 | | | | |
| Benjimin Huggins | $ 432.69 | $ 721.15 | $ 721.15 | $ 721.15 | $ 721.15 | $ 721.15 | $ 721.15 | $ 721.15 | $ 721.15 |
| Lisa Nichols | $ 427.80 | $ 713.00 | $ 713.00 | $ 713.00 | $ 713.00 | $ 713.00 | $ 713.00 | $ 713.00 | $ 713.00 |
| FICA Match | $ 195.66 | $ 326.10 | $ 326.10 | $ 326.10 | $ 326.10 | $ 225.12 | $ 225.12 | $ 225.12 | $ 225.12 |
| T1 Line | | | | | | | | | |
| Electric | $ 700.00 | | | $ 700.00 | | | | $ 700.00 | |
| Phone | $ 6,000.00 | | | $ 6,000.00 | | | | $ 6,000.00 | |
| Water | | $ 300.00 | | | | | $ 300.00 | | $ 300.00 |
| Office Expense | | $ 2,500.00 | | | $ 500.00 | | | $ 500.00 | |
| Gas | | | | | | | | | |
| Professional Fees | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| Daily Total | $11,504.49 | $9,474.15 | $6,674.15 | $13,374.15 | $7,174.15 | $5,226.77 | $5,526.77 | $12,426.77 | $5,526.77 |
| **Budget Total** | **$11,504.49** | **$20,978.65** | **$27,652.80** | **$41,026.95** | **$48,201.11** | **$53,427.88** | **$58,954.65** | **$71,381.43** | **$76,908.20** |

# EXHIBIT "B"

# EXHIBIT "B"

**Proposed Compensation Upon Successful Completion**

| Name | Amount |
|---|---|
| James Fisher | $10,000.00 |
| Kelly Baptiste | $5,000.00 |
| Benjimin Huggins | $10,000.00 |
| Lisa Nichols | $10,000.00 |
| Daily Total | $35,000.00 |
| **Budget Total** | **$35,000.00** |