IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

```
------------------------------------------------------------------------x
                                              :
In re:                                        :     Chapter 11
                                              :
C. BEAN TRANSPORT, INC.,                      :     Case No. 2010-BK-71360
                                              :
Debtor.                                       :
                                              :
------------------------------------------------------------------------x
```

**PROPOSED MODIFICATIONS TO C. BEAN
TRANSPORT, INC.'S PLAN OF LIQUIDATION**

C. Bean Transport, Inc. ("Debtor"), the debtor-in possession herein, respectfully submits the modifications to the Plan of Liquidation it originally filed October 8, 2010 ("Plan") pursuant to 11 U.S.C. § 1127. The modifications are consistent with the Plan, and address twelve (12) matters of: (a) clarification of treatment or secured creditor treatment, (b) the Allowed Governmental Claims in Class 3, (c) the claim of Arkansas Department of Finance Authority ("ADFA") in Class 5, (d) the claim of Diamond Bank in Class 7, and (e) the claim of FFCI in Class 8, and additional language in the Creditors Trust to promote clarity and consistency. The following text includes the relevant provision as modified, with the proposed modification marked.

The proposed modifications are as follows (to utilize existing language with changes marked):

1. A. Paragraph 7.3 <u>Class 3: Allowed Governmental Claims</u>. Class 3 Allowed Governmental Claims will be paid in the <u>full</u> allowed amount within sixty (60) days of the Effective Date<s>, or if</s><u>. If</u> funds are not available on that date, <u>payment shall be made</u> as soon thereafter as funds are available, <s>or within sixty (60) days of a final order</s> <u>but if not so paid</u>

- 2 -

payments of Class 3 Claims shall begin on the 60ᵗʰ day following the Effective Date, to the holders of ~~allowing~~such claims on account of such claim~~, whichever is~~ and paid in equal monthly installments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim and in amounts sufficient to pay the allowed amount in full within a period ending not later~~.~~ than five (5) years after the entry date of the order for relief herein. In no event shall Class 3 Creditors receive on account of their claim less than determined cash payments over a period ending not later than five (5) years after the entry date of the order for relief, or a total value as of the Effective Date. The Effective Date for the purposes of payment of Allowed Governmental Claims shall be as defined in Paragraph 3.47 of the Plan, notwithstanding any other provision therein. In the event C. Bean or the Creditors Trust shall fail to comply with this provision, Class 3 Creditors may pursue any remedy under applicable law, in a court of competent jurisdiction.

  B. Rationale: To provide assurance that the Creditors in this Class will receive treatment consistent with the provisions of the Bankruptcy Code with respect to priority tax claims.

  2. A. Paragraph 5.5. Class 5: <u>ADFA Claims</u>. This Class consists of the Secured Claim of ADFA, encumbering the Jenny Lind Real Estate in the approximate principal amount of $5,459,151, together with accruing interest, costs, and reasonable attorney's fees, to the extent of the value of the collateral.~~;~~ and

  B. Paragraph 7.5. <u>Class 5: ADFA</u>: ADFA shall have an Allowed Secured Claim in the amount of $5,459,151~~,~~, together with accruing interest, costs, and reasonable attorney's fees to the extent of the value of the collateral. ADFA will retain all mortgages and liens in the Jenny Lind Real Estate as existed on the Petition Date and such

mortgages and liens shall be entitled to the same priority as existed on that date. ~~Except as noted herein, the~~The Jenny Lind Real Estate will be transferred to the Creditors Trust, subject to the ADFA mortgages and liens. C. ~~Bean will~~ Bean, prior to confirmation, and the Creditors Trust, after confirmation, will attempt to sell the ~~following tracts of the~~ Jenny Lind Real Estate~~: (a) The Jenny Lind Corner Lot; (b) the Jenny Lind Truck Repair Facility; and (c) the Jenny Lind Office Building,~~ in ~~one~~its entirety or ~~more sales (hereinafter called the "ADFA Parcels"),~~ in parcels as listed herein or as reconfigured, as designated by C. Bean or the Creditors Trust, as approved by ADFA, to be offered and sold for sales prices approved by both ADFA and C. Bean~~.~~ or the Creditors Trust as appropriate. Upon a ~~successful~~ sale, the proceeds of sale for ~~each such tract, at Closing~~the Jenny Lind Real Estate or any parcel thereof shall be paid by the Creditors Trust to ADFA, net of traditional closing costs, commissions, and transfer costs. ADFA shall apply such proceeds to the payment ~~of principal~~ on the ADFA Claim. ~~As an alternative to sale of the ADFA Parcels by C. Bean~~ In the event the Jenny Lind Real Estate or any parcel thereof have not been sold within twelve (12) months after the Effective Date, the Creditors Trust shall, at the request of ADFA, ~~at a time prior to the Effective Date, C. Bean will~~ transfer ~~title to ADFA and abandon any interest of the Estate in~~ and convey the Creditors Trust's interest in the unsold Jenny Lind Real Estate to ADFA, or its designee, provided that the Creditors Trust shall be allowed to have continued occupancy for up to sixty (60) days from the date of transfer. ADFA may proceed with disposition of such ADFA Parcels ~~in consideration for a~~ and, upon Closing, ADFA will credit ~~to C. Bean on~~ the ADFA ~~Secured~~ Claim for the sales price thereof, less traditional closing costs, commissions, and transfer costs in ~~an amount agreed upon by ADFA and C. Bean, and if such agreement cannot be reached, by the Court~~payment or partial payment of the ADFA Claim.

In the event a balance remains on the ADFA Claim, then ADFA shall have an Unsecured Claim for such amount.  In the event a surplus exists, such funds shall be paid to the Creditors Trust.

In the event a transfer of the Jenny Lind Real Estate to ADFA hereunder, the Creditors Trust will take such actions, including applications to this Court if appropriate, to remove clouds or impediments to title to the Jenny Lind Real Estate.  In addition, this Plan provides that ADFA may name C. Bean and/or the Creditors Trust as defendants, if necessary, to clear any title issues.

Commencing on the Effective Date, and for a period of twelve (12) months, and so long as the Creditors Trust owns and possesses the Jenny Lind Real Estate, the Creditors Trust shall pay to ADFA monthly the ~~greater~~ amount of $25,000 ~~or the monthly accruing interest on its outstanding debt as such amount may be reduced by credits or by payment to ADFA, with interest calculated at the rate of _____~~.  Thereafter~~,~~ and for so long as the Creditors Trust shall retain ownership of the Jenny Lind Real Estate under this Plan, commencing on the thirteenth month after the Effective Date, the ADFA Claim shall be paid in forty-eight (48) monthly installments of principal and interest at ~~\_\_%~~seven (7%) interest as set forth herein, with maturity at the end of such forty-eight (48) month period.  Installment amounts shall be calculated on a fifteen year amortization schedule, providing for monthly payments.  At maturity, the remaining balance shall become due to ADFA.  The Creditors Trust shall maintain insurance against loss in the amount equal to the replacement value of all improved tracts and ADFA shall be a designated loss payee.  ~~The Creditors Trust will operate~~Profits derived from operation of the Jenny Lind Warehouses ~~and its profits shall~~ will fund the payments required hereunder.  The Creditors Trust shall establish and fund an ad valorem tax escrow account, depositing at least $2,000 per month in such account commencing on November 2010, with the goal of funding such escrow fully as soon as practical.

The Creditors Trust shall comply with the provisions of the Plan and covenants and terms of the Real Estate Mortgages which encumber the Jenny Lind Real Estate. Without permission of ADFA, the Creditors Trust may not voluntarily encumber the Jenny Lind Real Estate. Upon a failure of the Creditors Trust to comply with a material financial term of the Plan or the Jenny Lind Real Estate mortgages, ADFA shall provide the Creditors Trust with written notice thereof, and the Creditors Trust shall have twenty (20) days to cure same, and with respect to failure to comply with a non-financial covenant and term, the Creditors Trust shall have forty-five (45) days to cure a non-financial default. If the Creditors Trust does not cure any such default subject to such notice within the prescribed periods, the Creditors Trust shall transfer and convey to ADFA, or its designee, the Jenny Lind Real Estate, or such parcels as it may then own. The Creditors Trust shall be entitled to a credit against the ADFA claim for the value of the Jenny Lind Real Estate.

The Creditors Trust shall maintain the Jenny Lind Real Estate, and in the event that an opportunity to sell the Jenny Lind Real Estate or a parcel thereof for an amount sufficient to discharge the ADFA Claim, or the balance thereof outstanding, plus a ten percent (10%) excess for the Creditors Trust, the Trustees shall work in good faith to consummate such sale. Notwithstanding these provisions, the Creditors Trust may transfer its entire interest in the Jenny Lind Real Estate to the ADFA for credit on the ADFA Claim for the Jenny Lind Real Estate conveyed, if at any time the Creditors Trust determines that maintaining the Jenny Lind Real Estate is of no economic benefit to beneficiaries of the Creditors Trust.

The Jenny Lind Real Estate is serviced by rail service, crossing the Millcreek Real Estate. C. Bean or the Creditors Trust will, as owner of the Millcreek Tract, prior to its transfer, grant to the Jenny Lind Real Estate a reciprocal easement to use such rail service across the Millcreek

1926684v1

Tract and shall also grant the Millcreek Tract an easement across the Jenny Lind Tract, which reciprocal easement shall be in a form acceptable to ADFA, FFCI, C. Bean, or the Creditors Trust. If no agreement can be reached, the Court will be requested to review and approve such reciprocal easement.

    C. Rationale: To settle and compromise its disputes with ADFA and clarify treatment.

  3. A. Paragraph 7.7. <u>Class 7: Diamond Bank Claim</u>: C. Bean disputes this Claim, asserting that ~~the obligation~~C. Bean did not receive consideration for what was essentially a ~~pre-existing obligation~~borrowing of ~~Curt~~C. Bean Lumber Company, Bean Timber Resources, Inc., and Bean Lumber Company~~,~~. C. Bean asserts that the execution and ~~that~~delivery of the note and pledge of collateral in connection therewith was at the origination without adequate consideration, ~~C. Bean guaranteed the obligation and pledged collateral assets to secure the same. If the~~ and is avoidable. Diamond Bank ~~Claim becomes an Allowed Claim against C. Bean, C.~~disputes this contention and asserts that C. Bean ~~will convey~~ is a maker of the note which received adequate consideration, and is jointly liable for the balance due thereunder, and that the collateral pledged by C. Bean constitutes a valid lien and mortgage against the property. This matter will be litigated in the bankruptcy court by adversary proceeding, which C. Bean will commence within forty-five (45) days of Confirmation Date. Pending determination of this dispute, all liens and encumbrances asserted by Diamond Bank will remain unaffected by Confirmation of this Plan. If C. Bean does not commence such adversary proceeding within the forty-five (45) days of Confirmation Date or if it is determined that the Diamond Bank claim is an allowed claim against C. Bean and its lien against collateral is valid, C. Bean or the Creditors Trust as the case may be will convey to Diamond Bank the collateral which is subject to

Diamond ~~Bank's~~Bank's pre-~~-~~petition lien, and the balance of the Diamond Bank ~~Claim~~lien will be allowed as a Class-~~ ~~14 Allowed Unsecured Claim~~.~~, reduced by the amount received by Diamond Bank from liquidation of collateral.

   B. Rationale:  To settle and compromise its disputes with Diamond Bank and clarify treatment.

 4. A. Paragraph 7.8  <u>Class 8:  FFCI Claim</u>.  FFCI will retain its ~~lien~~mortgages and liens in the Millcreek Real Estate and in the Bank Midwest Real Estate~~,~~ and will not, pursuant to this Plan, be deprived of any rights or remedies under applicable law, arising thereunder, except as expressly provided in this Plan.  FFCI shall also retain its administrative claim of $10,662 or portion thereof for use of cash collateral if not paid at time of confirmation~~.~~ and its lien in pre-petition accounts receivable arising from trucking operations.  Its adequate protection lien in the amount of $111,908 ~~and all proceeds of Rolling Stock which were subject to its liens and security interests~~ shall terminate~~.~~, but FFCI shall receive, as adequate protection of its interests, from C. Bean, the sum of twelve thousand dollars ($12,000) payable monthly commencing on the Effective Date, but which shall be accelerated to payment of the remaining balance if the Millcreek Tract is sold, as to any monthly payments not made at such time.  The FFCI Claim shall be reduced for credit of proceeds received from prior collateral liquidations and such additional amounts as have been paid through the Effective Date.  FFCI's Claim shall also be reduced by the amount of net proceeds from the disposition of Rolling Stock.  C. Bean reserves the right to assert that it is entitled to the value of Rolling Stock which would have resulted from a commercially reasonable sale.  The Millcreek Tract will be conveyed to the Creditors Trust subject to the FFCI and 1st Source ~~lien.  In addition, of~~liens.  C. Bean will provide, in connection with the Millcreek Tract, an easement in recordable form providing a

right of ingress and egress across the existing Jenny Lind Real Estate, in the form mutually acceptable to FFCI and C. Bean.  In addition, at the option of FFCI, C. Bean will convey to FFCI, free of lien claims and encumbrances the Millcreek Real Property for a credit bid value of $500,000 and will provide pursuant to sale in connection accordance with such transfer a right of egress across the existing Jenny Lind Real Estate, in the discretion of 11 U.S.C. Bean. § 363.  Should FFCI decline the transfer and sale of the Millcreek Tract pursuant to § 363, the Millcreek Tract will thereafter be sold by the Creditors Trust, and net proceeds after deducting the traditional closing costs, commission, and transfer fees will be paid to FFCI to the extent of sale proceeds necessary to pay the FFCI Allowed Claim.  The excess Millcreek sale proceeds, if any, will be paid to 1st Source.  To the extent FFCI holds an unsatisfied claim after all payments hereunder, it FFCI will be entitled to an a Class 14 unsecured claim in the amount allowed as a Rolling Stock Deficiency Claim.  With respect to the sale of the Millcreek Tract, the Creditors Trust will proceed with sale or disposition upon the schedule and utilizing professionals and procedures recommended by FFCI.  The Creditors Trust shall provide at least twenty (20) days notice to FFCI of a proposed sale and terms thereof in advance of sale of the 271 Warehouse Facility in which it asserts an interest.

      B.    Rationale:  To settle and compromise its disputes with FFCI and clarify treatment.

    5.    A.    <u>Treatment of Allowed Administrative Claims</u>.  The Allowed Administrative Claims, after approval of the Bankruptcy Court, will be paid by C. Bean in cash within sixty (60) days of the Effective Date or within sixty (60) days of the determination and allowance by the Bankruptcy Court, if determined after the Effective Date, or paid at a later date as may be agreed between Debtor and any Administrative Claimant.  C. Bean's professionals

agree that no payment shall be made for administrative claims hereunder, unless at such time C. Bean or the Creditors Trust shall have paid all obligations due hereunder to or for the benefit of holders of secured claims. In addition, all interim compensation and reimbursement previously allowed to holders of Allowed Administrative Claims, pursuant to Orders of the Bankruptcy Court, shall be subject to Court review in connection with final applications for compensation. Professional fees incurred by approved Counsel for Reorganized Debtor or Committee post-confirmation or other professionals retained by Reorganized Debtor shall not require Court approval.

        B.     Rationale: Payment to professionals will be deferred by agreement. This provision is intended to assure that adequate protection payments or periodic payments to holders of secured claims under the Plan will be paid and current prior to usage of the Debtor's funds to pay professional fees, which professionals are agreeable to do.

    6.    A.    7.14.    <u>Class 14: Unsecured Claims</u>. C. Bean will transfer to the Creditors Trust, pursuant to the Plan, ~~the New Stock,~~ the Jenny Lind Warehouse, the Millcreek Real Estate, and the 271 Warehouse, subject to existing liens herein for operation by the Creditors Trust. ~~In addition C. Bean will transfer to the Creditors Trust for administration pursuant to this Plan the Millcreek Real Property, the 271 Undeveloped Tract, the Jenny Lind Corner Lot, the Jenny Lind Office Building and the Jenny Lind Truck Repair Facility, make periodic distributions on Allowed Unsecured Claims.~~

In addition, Class ~~13~~ 14 Creditors shall be granted, pursuant to this Plan, a Beneficial Interest in Creditors Trust.

        B.     Rationale: To correct errors and provide greater clarity. This change does not affect Plan treatment.

7.	A.	<u>Trustees</u>.  The Creditors Trust shall be administered by three Trustees, each designated a Trustee of the Creditors Trust, who shall, from their number select a chair.  The proposed Trustees will be designated at or before the Balloting, and shall be appointed Trustees of the Creditors Trust pursuant to the terms of the Creditors Trust.  The Trustees acting pursuant to the Creditors Trust shall implement this Plan.  In the event a successor Trustee of the Creditors Trust shall be required, because of a vacancy, such successor shall be appointed pursuant to the provisions of the Creditors Trust.  Trustees of the Creditors Trust shall be entitled and authorized to pursue any objection to a Claim and to file any report or pleading the Court in discharge of Debtor's duties hereunder, for the benefit of the Creditors.  The Creditors Trust or its Trustees appointed to oversee and manage the Creditors Trust shall not be liable to the Debtor, any Creditor or interest holder, or any entity for any action taken or omitted to be taken in connection with actions or duties undertaken in this Case or under this Plan, if undertaken in good faith or in connection with the administration of the Plan except that such liability may only be imposed as a result of gross and wanton misconduct.  Trustees appointed to the Creditors Trust shall be entitled to be indemnified from the assets for the Creditors Trust, including expenses for professional fees incurred in defending a claim asserted against him or her as Trustee, if approved by the Court<u>, provided, however, that such indemnification shall be junior to any encumbrance on assets of the Creditors Trust</u>.  The Bankruptcy Court shall have and retain exclusive jurisdiction to resolve any questions concerning any such claims.

      B.	Rationale:  This provision is intended to resolve any question concerning the Trustees' indemnification rights and provide that the same are not superior to any mortgage or lien on the assets of the Creditors Trust.

8.  A.  9.1  <u>Designation of the Trustees of the Creditors Trust</u>.  Pursuant to this Plan, on the Confirmation Date, the Trustees of the Creditors Trust shall be designated.  The Trustees of the Creditors Trust, as Trustees and as fiduciaries for holders of Allowed Claims in Class 14, will administer the assets of the Creditors Trust.  The Trustees shall have the powers and responsibilities designated in the Plan, Confirmation Order, Creditors Trust, any order issued by the Bankruptcy Court, and applicable bankruptcy and non-bankruptcy law.  As compensation for performing the duties of the Chair of the Creditors Trust, *the Clinic* shall receive compensation of one percent (1%), and the other two Trustees shall each receive compensation of one-half percent (½%) cash on all cash distributed to parties holding Beneficial interests.  The Trustees shall have the discretion to employ one or more attorneys or other professional to assist in administering the Creditors Trust, prosecuting C. Bean's causes of action against third parties and objection to Claims for the benefit of parties holding Beneficial Interests<u>, provided that no fees of professionals shall be paid unless the Creditors Trust is current on its obligations under the Plan to the holders of secured claims</u>.

B.  Rationale:  It is the Plan's intention that compliance with Plan obligations to secured creditors for periodic payment and other provisions provided herein shall be satisfied prior to the payment of professionals.

9.  A.  Sections 4.2, 10.3, 10.4, 10.5, 10.6, 10.7, 11.1, 13.1, 13.2 (other than the last sentence, which should just reflect "Debtor"), 14.2, 17.6, and 17.9 are modified to replace the term "Reorganized Debtor" with the term "Creditors Trust."

B.  Rationale:  The Plan is a liquidating plan and there will not be any Reorganized Debtor; rather, all assets will be transferred to the Liquidating Trust.  This modification is to correct the errors in these paragraphs.

10. A. Sections 8.4 and 9.1 of the Plan are modified to add the following language:

> The Trustees of the Creditors Trust established by the Plan will be Gary M. McDonald, counsel for the Debtors; Tom Robertson, and a representative designated by secured creditor, ADFA.

B. Rationale: Various provisions of the Bankruptcy Code require that the Plan provide the names of individuals that will be responsible for the Debtor's assets and administering the Plan upon confirmation.

11. A. 14.2 **INJUNCTIONS**. EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS OR ENTITIES WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A DEBT OR CLAIM, OTHER THAN A FEE CLAIM OR A CLAIM FOR ADMINISTRATIVE EXPENSES, WHICH AROSE BEFORE THE EFFECTIVE DATE OF THE PLAN, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DEBT OR CLAIM: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST REORGANIZED DEBTOR OR ITS ASSETS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE REORGANIZED DEBTOR OR AGAINST ITS ASSETS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST REORGANIZED DEBTOR OR AGAINST ITS ASSETS; (IV) <u>EXCEPT AS TO THE ARKANSAS DEPARTMENT OF FINANCE & ADMINISTRATION ONLY,</u> ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION

**DUE TO REORGANIZED DEBTOR OR ITS ASSETS; AND (V) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. ANY OF THE ABOVE-DESCRIBED ACTIONS BROUGHT PURSUANT TO THE PLAN OR CONFIRMATION ORDER SHALL BE COMMENCED IN THE BANKRUPTCY COURT. THE CONFIRMATION ORDER SHALL CONSTITUTE SUCH AN INJUNCTION. ANY PERSON OR ENTITY INJURED BY ANY WILLFUL VIOLATION OF SUCH INJUNCTION SHALL RECOVER ACTUAL DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS, AND, IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES FROM THE WILLFUL VIOLATOR.**

B.   Rationale:   To resolve the objection to the Plan filed by Arkansas Department of Finance & Administration.

12.   <u>Modifications to the Creditors Trust Agreement</u>.  The following modifications are proposed to the Creditors Trust Agreement.

### 2.1   Transfer of Assets to the Creditors Trust

C. Bean and the Trustees hereby establish the Creditors Trust on behalf of and for the sole benefit of the Beneficiaries. On the date hereof, C. Bean shall deliver to the Creditors Trust the Trust Assets required to be transferred to the Creditors Trust on the effective date (the "<u>Effective Date</u>") of the Plan. The Trustees hereby agree to accept and hold the Trust Assets in the Creditors Trust for the sole and exclusive benefit of the Beneficiaries, subject to the terms and conditions of the Plan and the Creditors Trust Agreement<s>.</s><u>, and subject to all liens and mortgages which encumber such assets, and the terms and provisions of the Plan.</u>  Following such transfer, C. Bean shall have no interest to or in the Trust Assets. The Trust Assets shall be valued pursuant to the terms contained herein, and those valuations shall be used for all federal income tax purposes.

### 2.4   Purpose of the Creditors Trust

The Creditors Trust shall continue in existence so long as necessary for the purpose of liquidating the Trust Assets with no objective to continue or engage in the conduct of a trade or

business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust. Consistent with such objective, the Trustees, subject to the terms of the Plan and the Creditors Trust Agreement, shall: (i) satisfy all obligations and duties imposed by the Plan and the Creditors Trust Agreement; (ii) enforce and prosecute all claims, causes of action, interests, rights, and privileges of C. Bean; (iii) object to claims and interests wrongfully asserted against C. Bean; (iv) administer the Plan and the Creditors Trust; (v) make all distributions under the Plan and the Creditors Trust Agreement; and (vi) file all appropriate tax returns. The Real Estate assets conveyed to the Creditors Trust identified in the Plan as the Jenny Lind Real Estate shall remain fully subject to all mortgages and liens of ADFA. The 271 Property shall remain subject to all mortgages and liens of Bank Midwest and FFCI, and the Millcreek Real Estate shall remain subject to the claims of FFCI and 1st Source. As provided in the Plan, the mortgages and liens of ADFA, Bank Midwest, and FFCI remain fully enforceable against the respective properties, notwithstanding transfer to the Creditors Trust.

### 3.1 Appointment

C. Bean hereby designates _____ to serve as the Trustees of the Creditors Trust, and _____ hereby accepts such appointment and agrees to serve in such capacity, effective as of the date hereof. The Trustees' powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Creditors Trust, but subject to mortgage and lien rights in real estate. The Trustees shall have the authority to bind the Creditors Trust, but shall for all purposes hereunder be acting in the capacity as Trustees, and not individually. The Trustees shall owe a fiduciary duty to the Beneficiaries, subject to all liens and mortgages affecting, and comply with all Plan provisions related to the real estate conveyed to the Constructive Trust. A chair will be elected from the Three Trustees, who will have the authority to carry forth the determinations of the Trustees.

### 3.3 Scope of the Trustees' Duties

The duties of the Trustees shall include the following:

Operating Real Estate Assets for the benefit of Beneficiaries, and as appropriate in the judgment of the Trustees and subject to the provisions, restrictions, and directions of the Plan and mortgages and liens encumbering the real estate to sell, lease, mortgage, refinance, or otherwise manage, encumber, or monetize the Real Estate Assets;

### 3.5 Limitation of the Trustees' Authority

Except as otherwise provided in the Plan and the Confirmation Order, the Trustees shall not and are not authorized to engage in any trade or business with respect to the Trust Assets or any proceeds therefrom or take any action, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust or as permitted herein. Further, the Trustees may take no action in contravention of the Plan.

    B. Rationale: The rationale is to make it absolutely clear that the real

estate assets conveyed to the Trust remain subject to the mortgages and liens as provided

in the Plan, and the provisions of the Plan, and that the Trustees are obligated in the discharge of their duties as Trustees to comply with the same. This change is by way of clarification rather than to effect in any change in treatment.

## AUTHORITIES IN SUPPORT OF MODIFICATIONS

Section 1127(a) of the Bankruptcy Code provides a mechanism for modification of a plan by the plan proponent prior to confirmation. That provision states:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the Court, the plan as modified becomes the plan.

11 U.S.C. § 1127(a). Such modification is to be implemented consistent with Federal Rule of Bankruptcy Procedure 3019. Bankruptcy Rule 3019 states:

> If the Court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder . . . it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bank. P. 3019. As noted in the case of *In re Sweetwater*, 57 B.R. 354, 358 (Bankr. D. Utah 1985), the confirmation hearing may serve to satisfy the hearing requirements of Bankruptcy Rule 3019. *See also In re Eagle Pitcher Indus., Inc.*, 203 B.R. 256, 272 (Bankr. S.D. Ohio 1996).

The proposed modifications contained herein are adequate Plan treatment to reflect the ruling of Judge Rasure in the Adversary Proceeding, all of which were contemplated by the Plan prior to these modifications. As such, the Committee submits that § 1127(a) and Bankruptcy Rule 3019 have been met and that the modifications herein are part of the Plan as a matter of law.

                                  DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

*/s/ Chad J. Kutmas*

By: _____

Gary M. McDonald, OBA No. 5960
Chad J. Kutmas, OBA No. 19505
320 South Boston, Suite 500
Tulsa, OK 74103-3725
(918) 582-1211
(918) 591-5360 (Fax)

*Attorneys for C. Bean Transport, Inc.*

1929471v2

- 16 -